———o———

JOHN B. WALLACE ET AL. v. HENRY LANGELAND ET AL.

*Principal and agent—Contract of hire—Negligence.*

Defendants agreed to pay for the use of a livery rig to be used by a former employé about his own business, he being present at the time, and the rig being delivered to him by the livery-stable keepers without objection, and neither party supposing that the contract extended beyond the payment for such use.

*Held*, that the defendants were not liable for the negligence of the party to whom the rig was delivered, resulting in its injury.

Error to Muskegon. (Russell, J.) Argued May 5, 1887. Decided June 16, 1887.

Case. Defendants bring error. Reversed. The facts are stated in the opinion.

*Clink & Jones*, for appellants.

*Nelson DeLong*, for plaintiffs.

MORSE, J. Plaintiffs sued defendants in the circuit court for the county of Muskegon in trespass on the case. The declaration contained two counts.

The first count alleged, in substance, that on the nineteenth day of October, 1885, at the city of Muskegon, the

plaintiffs let a horse, harness, and top-carriage of the value of $335 to defendants, for their use, and delivered the same, at defendants' special instance and request, to one Gerrit Houting, an agent of defendants; that said agent, while driving about said city of Muskegon, negligently suffered said horse, harness, and carriage to be run into by a locomotive upon the track of the Chicago & West Michigan Railway, by which collision the said rig was greatly damaged, and the plaintiffs also put to great expense in caring for and attempting to cure said horse of its wounds there received, until the death of said horse, which occurred November 4, 1885.

The second count differed from the first in averring the delivery of the rig to Houting, his acceptance of the same, and his negligence, and the consequent damage, without any allegation that he was the agent or servant of the defendants; but setting forth, as in the first count, that the rig was let to hire to the said defendants, and delivered to said Houting at their special instance and request.

There was no serious controversy as to the damage, or the negligence of Houting in causing such damage. The point in the case was the liability of defendants for his acts.

The circuit judge instructed the jury that if the plaintiffs established, by a fair preponderance of proof, that the defendants hired the property of the plaintiffs, and directed them to put it into the possession of Houting, and, while the property was in his possession under such hiring, he acted negligently with it, and that by reason of such negligence the plaintiffs suffered injury, the verdict should be in their favor for such damages as were sustained by them on account of such negligence. The jury found for the plaintiffs in the sum of $254.91. From the judgment entered upon such verdict the defendants bring error to this Court.

The parties do not differ materially as to the contract of hire. The plaintiffs were owners of a livery and feed stable on Pine street. The defendants were engaged in publishing

"The Muskegon Current," a newspaper circulating in the city of Muskegon. They were doing advertising for plaintiffs, and had an agreement that such advertising should be paid partly in cash and partly in rigs.

On the nineteenth day of October, 1885, Bagamore, the managing partner of the newspaper business, went to the plaintiffs' barn with Gerrit Houting, who had previously been at work for defendants, but who was not employed by them at this time, and said to plaintiffs, as one of them testifies:

"Let this young fellow have a rig. I have come down with him, so it will be all right. Charge it to our account."

Nothing was said as to whether Houting was to use the rig on his own account or on the business of defendants. The fact is, however, that Houting received and used the property for his own benefit, and defendants had no part in his use of it. Bagamore testified that he expected to pay for the hire of the rig by allowing it upon defendants' advertising bill against the plaintiffs. Defendants denied that Houting was either their servant or agent in fact, and Bagamore says he supposed that Houting was going to drive for an hour or two on his own pleasure or business.

The sole question to be determined is, under this contract of hire are the defendants responsible for the negligence of Houting? Houting was not the servant or agent of defendants in fact. The case must be considered the same as it would be if any person should step into a livery-stable with a friend or stranger, and say to the proprietor, "Let this man have a team to drive, and I will pay for the use of it;" and there would be in law no difference in liability whether such person paid the price of the hire of the team in cash on the spot, or it was charged to his account. Under such a contract, does the liability extend any further than the price of the hiring? Does the party hiring subject himself to the consequences of the negligence of the person to whom the team is delivered, the same as he would be liable for his own neg-

ligence if he used it, or if it was delivered to him, and he intrusted the driving of it to his servant or agent ? In this case the actual delivery was to Houting, and the defendants in terms became responsible only for the price of the hire.

It is contended by the plaintiffs' counsel that, so far as the plaintiffs are concerned, Houting must be held to have been the agent of defendants, and cites in support of his position the case of *Banfield v. Whipple*, 10 Allen, 27. But the decision in that case is put upon the express ground that Whipple, who hired the team, was present, and aiding and assisting the driver, Rowell, who killed the horse by immoderate driving. Whipple and Rowell had agreed to go on a pleasure ride together. On the trial it appeared that Whipple, a few days before the date of the ride, called at Banfield's stable, and hired two rigs. On the morning of the day the horse was killed Whipple called at the stable, took one rig, and drove away. Later in the day Rowell called, and the other horse and buggy was delivered to him. Whipple and Rowell afterwards met at Lawrence, and started away, each having a woman with him. Rowell had the full management and control of the bay colt which he was driving, and which was killed by overdriving. The jury found that this immoderate driving was with the aid and assistance of Whipple. The court affirmed the verdict for that reason, and it is not decided that Whipple would have been liable without such aid and assistance on his part. See 10 Allen, 30, 31.

We think the court erred in his instruction heretofore referred to. If the delivery of the rig was made to Houting and not to defendants, and he was not their servant or agent in fact, nor driving upon their business, but for his own benefit, it is difficult to perceive how the defendants can be made liable for his negligence. If the delivery had been made to the defendants, and they had entrusted the horse and buggy to Houting, then he would have been considered

their agent, and they would have been responsible that he used the rig with ordinary prudence and care. But that is not this case.

From the record, as presented to us, it appears that no objection was made by plaintiffs to putting the horse and buggy in the care of Houting. Nor does it appear that either plaintiffs or defendants supposed that the contract extended beyond the payment of the price of hire. It is shown by the acts and letters of the plaintiffs that at first they undertook to recover the damages from Houting, and as late as December 14, 1885, they wrote him that, if they could not recover the damages from the railway company, they must get it from him. The contract in express terms went no further than an agreement to pay the price of the hire, and the acts of the parties show that their intentions extended no further than the express words of the contract.

The judgment of the court below is reversed, and a new trial granted, with costs of this Court to defendants.

SHERWOOD and CHAMPLIN, JJ., concurred. CAMPBELL, C. J., did not sit.